## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERMITH SONNIER, As Personal | ) | |
| Representative of the Estate of Kermith | ) | |
| Sonnier, Jr., Deceased, | ) | 2:05-cv-14 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| OFFICER DENNIS FIELD, OFFICER | ) | |
| AUTUMN FIKE, OFFICER JOSH | ) | |
| MROSKO, OFFICER MARK | ) | |
| COSTELLO, In Their Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are numerous motions:

DOCUMENT NO. 51:   MOTION TO COMPEL PRODUCTION OF TREATMENT RECORDS FROM GREENBRIER TREATMENT CENTER BY DEFENDANT FIKE;

DOCUMENT NO. 53:   DEFENDANTS' JOINT MOTION CHALLENGING SUBSTANCE AND ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY OF DAVID E. BALASH

DOCUMENT NO. 54:   DEFENDANTS' JOINT MOTION CHALLENGING SUBSTANCE AND ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY OF W. KENNETH KATSARIS

DOCUMENT NO. 55:   DEFENDANTS' JOINT MOTION CHALLENGING SUBSTANCE AND ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY OF WERNER U. SPITZ, M.D.

DOCUMENT NO. 62:   MOTION FOR SUMMARY JUDGMENT BY DEFENDANT COSTELLO

DOCUMENT NO. 64:   MOTION FOR SUMMARY JUDGMENT BY DEFENDANT FIKE

DOCUMENT NO. 68:   MOTION FOR SUMMARY JUDGMENT BY DEFENDANT FIELD

DOCUMENT NO. 70:   MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
                   MROSKO

DOCUMENT NO. 81:   DEFENDANTS' JOINT MOTION TO STRIKE "AFFIDAVITS" OF
                   CHARLES RAY JAMES BRADY AND HALEY WILSON.

The issues have been fully briefed and the matters are ripe for disposition.[1]  After a careful

consideration of the motions, the filings in support and opposition thereto, the relevant case

law, and the record as a whole, the Court finds that  the motion to compel treatment records will

be granted; the Defendants' motions to exclude expert testimony will be granted in part and

denied in part; the Defendants' motions for summary judgment will be granted in part and

denied in part and the Defendants' joint motion to strike affidavits will be denied.


## BACKGROUND

In resolving a motion for summary judgment, a court must draw all reasonable

inferences in favor of the non-moving party.  Similarly, the first step in evaluating a claim of

qualified immunity is to "determine whether the facts, taken in the light most favorable to the

plaintiff, show a constitutional violation."  *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.

2002).  Accordingly, unless otherwise noted, the factual background is based upon Plaintiff's

Responsive Concise Statement of Material Facts *(Document No. 73)*.

The incident which gave rise to this lawsuit occurred on May 5, 2004 in the early

afternoon.  Officer Autumn Fike of the Brownsville police department encountered a gray

---

[1] Plaintiff did not file a response to Document No. 51.

pickup truck driven by Kermith Sonnier, Jr. ("Sonnier" or "Plaintiff")[2] which had a suspended registration for insurance cancellation.  The encounter turned into an extended pursuit involving three cars and four officers, and ultimately, led to Sonnier's death.  Officer Dennis Field worked for Redstone and West Brownsville police departments.  Defendant Mrosko had recently graduated from basic training and had been hired by Redstone as an officer in training approximately one month prior to the incident.  Field and Mrosko were riding together when they responded to Fike's call for backup.  Defendant Costello worked for Centerville Borough and also responded to Fike's call.

The parties dispute numerous critical details regarding the incident.  No officer saw Sonnier brandish a weapon (other than the truck) or possess any type of drug paraphernalia.  Plaintiff points to evidence in the record that Officer Fike could have easily blocked a dead-end road early in the encounter, but instead pulled out of the way so that Sonnier's truck could get by.  Multiple witnesses testified that the chase occurred at low speed (as low as 5-10 m.p.h.), did not endanger bystanders, and that Sonnier never attempted to "ram" the officers or the patrol cars.  Defendants assert that Sonnier drove aggressively and at high speeds, rammed their vehicles and endangered bystanders throughout the pursuit.

Most importantly, the parties dispute the events at the conclusion of the pursuit which culminated in Officer Field fatally shooting Sonnier.  The pickup truck proceeded up an off-road quad trail and the officers followed on foot because their patrol cars became bogged down.  Officers Fike and Costello were somewhat further up the trail than Officers Field and

---

[2]For convenience, the Court will refer to Kermith Sonnier, Jr., as the Plaintiff.  Kermith Sonnier, Sr., is bringing this action as the personal representative of his son's estate.

3

Mrosko.  The truck then turned around and proceeded back down the narrow trail toward the officers.  Officer Fike shrank to the side of the trail and testified that she shot at the truck, although Costello did not see or hear her shoot and no bullet from her gun was recovered.  Officer Costello leaped out of the way.  The truck continued down the path toward Field and Mrosko, both of whom went up the embankment on the right side of the trail.  No other persons were nearby.  Officer Field fired two shots, one of which hit the left front fender skirt.  The other shot struck Sonnier.  Defendants contend that the shooting was justified because the truck presented a direct and substantial danger to their own safety.  The autopsy showed that the bullet entered behind Sonnier's left shoulder and that the trajectory was from back to front, and that there was no "stippling" or soot deposit at the entry wound.  Accordingly, Dr. Wecht opined that the shot was fired beyond 24 inches away.  Plaintiff has introduced an expert report from David E. Balash, a crime scene investigator, who opines that the fatal wound was inflicted after the truck had moved past Officer Field and no longer threatened him.  Plaintiff has also introduced an expert report from W. Ken Katsaris, a law enforcement instructor, who opines that the use of deadly force against Sonnier was excessive, unreasonable and in violation of policy.

Sonnier's truck proceeded for a short distance after the shooting, bumping into several cars, with officers again in pursuit until the truck came to a stop on the road.  Officer Field testified that he observed the reverse lights on the truck come on and fired a shot into the left rear tire.  Field and Mrosko then yelled for Sonnier to show his hands, tactically approached the truck and pried Sonnier's hand from the wheel and removed him from the vehicle.

The officers testified that they first realized that Sonnier had been shot when they approached the truck.  The officers testified that Sonnier mouthed "I can't breathe," and they tried to control the bleeding.  They assert that an ambulance was called immediately and arrived on scene within three to five minutes.  In fact, two ambulances responded.  The police dispatcher's log shows that at 4:51 pm, officers were still in pursuit of Sonnier.  Paramedic John Duke testified at the Coroner's Inquest that his ambulance was called at 4:51 pm and arrived on the scene at 4:58 pm.  When Duke arrived, another paramedic was already administering care to Sonnier.  Plaintiff admits that ambulance dispatch records show a call for EMS at 4:53 pm.  Sonnier died in the ambulance en route to the hospital at 5:15 pm.

Plaintiff contests this version of events due to the autopsy findings of numerous abrasions and bruises on Sonnier's body that had been inflicted within twelve hours of his death.  Apparently, Plaintiff seeks to infer that Defendants delayed care and roughly treated Sonnier.  However, Dr. Wecht testified at the Coroner's Inquest that the abrasions were consistent with Sonnier being pulled from the truck and placed on a rough surface such as a road, and that "[t]here's nothing here that would suggest to me that someone had been struck." Plaintiff's Exhibit I (Coroner's Inquest Transcript at 107, 108).  Plaintiff has introduced an expert report from Werner U. Spitz, M.D., a forensic pathologist, who opines that a delay in providing medical assistance played a significant role in Sonnier's death.  *See also* Plaintiff's Exhibits I, L, M (Dr. Wecht opining that Sonnier may have survived if he received skilled thoracic surgery within an hour of the shooting).  However, Plaintiff does not point to any material disputes of fact in the record regarding the timeline of events concerning Sonnier's removal from the truck and the officers' request for medical treatment.

I.      <u>Motion to Compel Production of Treatment Records (Document No. 51)</u>

        Defendant Fike seeks to examine records of treatment Sonnier received at Greenbrier

Treatment Center.  Plaintiff's counsel mailed an authorization to Greenbrier to release these

records, and does not oppose the motion to compel.  Despite the authorization and a subpoena

from defense counsel, personnel at Greenbrier have refused to produce the records absent a

court order.  The Court will order that Greenbrier shall fully comply with the authorization and

subpoena and shall produce the relevant treatment records of Kenneth Sonnier, Jr. forthwith.


II.     <u>Motions Challenging the Substance and Admissibility of Proposed Expert Testimony
        by David E. Balash, W. Ken Katsaris and Werner U. Spitz, M.D. (Document Nos.
        53, 54, 55)</u>

        Plaintiffs have submitted expert reports from David Balash, a ballistics and crime

scene investigator, Ken Katsaris, a law enforcement instructor on the use of deadly force, and

Dr. Spitz, a forensic pathologist.  The Defendants' motions will be addressed together because

they make similar challenges.  In essence, Defendants contest the foundation for the experts'

opinions, the lack of detail in the reports, and the conclusory nature of the opinions rendered.

Defendants do not challenge the qualifications of Plaintiff's experts.  Moreover, Defendants did

not avail themselves of the opportunity to depose Plaintiff's experts.

        Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert report "shall

contain a complete statement of all opinions to be expressed and the basis and reasons

therefor."  Federal Rule of Evidence 702 provides that "if scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or

education, may testify thereto in the form of an opinion or otherwise." Rule 702 obligates

judges to act as a gatekeeper to ensure that any scientific testimony or evidence admitted is

relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

The party offering the expert has the burden of proving admissibility. *Id.* at 592 n.10. The

subject of an expert's testimony must be grounded in the methods and procedures of science and

based on more than a subjective belief or speculation. *Id.* at 589-590. Moreover, Rule 702

requires that expert testimony be (1) based on sufficient facts or data; (2) be the product of

reliable methods; and (3) be applied reliably to the facts of the case, or "fit." *See In re Paoli*

*R.R. Yard Litigation*, 35 F.3d 717, 741-43 (3d Cir. 1994) (listing factors).

The requisite level of "completeness" is not susceptible of a concrete, bright-line

answer. In *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646 (D. Kan. 2003), the Court noted that the

disclosures required by Rule 26 need not anticipate every *Daubert* challenge. The Court

explained that Rule 26 mandates a complete report to minimize the cost of deposing experts

and to prevent ambush at trial but does not mandate disclosure of every nano-detail. *Id.* at 652.

On the other hand, a proper foundation for the expert's opinion is required. *Elcock v. Kmart*

*Corp.*, 233 F.3d 734, 756 n.13 (3d Cir. 2000).

A.     Balash Report

David Balash's report is five pages, single-spaced. Mr. Balash listed the documents

and evidence he examined, outlined his qualifications and then offered 2 ½ pages of

"Comments and Observations" regarding the incident. Many of Mr. Balash's comments are

directed at the alleged inadequacy of the post-incident investigation performed by the

Pennsylvania State Police.  However, Balash also opines regarding Officer Field's use of lethal force.

Defendants object to Balash's testimony regarding the investigation by the State Police as irrelevant.  The Court agrees.  Any errors or omissions by the State Police in their post-incident investigation could not be attributed to the Defendants.  Accordingly, Balash's opinions and testimony on this topic will be inadmissible at trial.

Defendants also object to comments made by Balash regarding the credibility of certain officers.  Plaintiff concedes that such comments would be inadmissible at trial. Plaintiff argues, though, that Balash should be permitted to correlate the facts, including witness testimony and statements, with his opinion.  The Court does not agree.  While Balash is free to explain the conclusions he draws from the crime scene evidence, he may not opine as to whether or not he believes that the officers' prior statements and/or testimony is credible.  Such testimony would exceed Balash's expertise and would invade the province of the jury.  *See United States v. Shay*, 57 F.3d 126, 131 (3d Cir. 1995).

Defendants also challenge the foundation for Balash's opinions regarding Officer Field's conduct.  Defendants do not challenge Balash's qualifications regarding ballistics or crime scene investigation, nor do they directly challenge his principles and methodology.  His specialized knowledge and experience in recreating the scene may be helpful to the factfinder. Balash adequately explains the basis for his opinions about Field's shots.  While Balash's report is not a model of thoroughness, it is sufficient to comply with Rule 26.  The Court concludes that this aspect of Balash's expert testimony is admissible.  However, at trial, Balash will not be permitted to testify to any opinions not fairly reflected in his report.

B.     Katsaris Report

Plaintiffs have designated W. Ken Katsaris as a "police procedures" expert.  He

submitted a four-page, single-spaced "preliminary affidavit."  The report details his law

enforcement and training experience, identifies the materials reviewed, and then contains two

paragraphs explaining the two opinions he reached.  An attachment contained his curriculum

vitae and a list of testimony in the past four years.

Defendants challenge Katsaris' failure to review any of the 18 depositions taken in

the case.  This argument goes to the weight of the evidence and not admissibility.  Defendants

also challenge the conclusory nature of Katsaris' opinion regarding the pursuit and his alleged

failure to identify and describe the policies and training he believes were violated and what the

officers should have done instead.  The case cited by Defendants, *Bodine v. Warwick*, 72 F.3d

393, 400 (3d Cir. 1995), does not involve the admission of expert testimony, but rather, it

instructs courts to permit the jury to decide if excessive force was used.  Katsaris gives an

explanation, albeit somewhat cursory, of the basis for his opinion regarding the pursuit and

excessive force policy violations.  The Court will permit Katsaris to testify as to the alleged

policy violations, but he will not be permitted to testify to any opinions not fairly reflected in

his report.

Defendants also contest the lack of foundation and explanation for Katsaris' opinion

regarding the use of deadly force.  Defendants cite *Owens v. City of Fort Lauderdale*, 174 F.

Supp.2d 1298, 1311 (S.D. Fla. 2001), in which a court disregarded large portions of the expert

report prepared by Katsaris in that case as conclusory.  In the present matter, while there is less

than ideal explanation, the Court cannot conclude that Katsaris' opinion regarding the use of

9

deadly force is inadmissible.  Katsaris did explain, at least in general terms, the basis for his

opinion, i.e., that the officers had time to remove themselves from danger and that Field shot

from a position of safety.  Katsaris' training and experience may be helpful to the jury.

Defendants are free to challenge Katsaris' alleged lack of analysis, lack of information and any

other shortcomings in his opinions on cross-examination at trial.

C.   Spitz Report

Spitz is offered as an expert forensic pathologist.  His report contains 2 ½ pages of

text setting forth the documents he reviewed, a brief recitation of the May 5th incident, and a

summary of the autopsy findings.  Spitz' opinions are set forth in single sentences, without any

explanation.  Spitz opines that delay in providing medical assistance played a significant role in

Sonnier's death, that Sonnier had an average life expectancy, and that he suffered conscious

pain and fear as he laying bleeding after being shot.

Defendants challenge Spitz' report on several grounds.  First, they contend that

Spitz' opinion regarding the delay in medical assistance is not related to Defendants' conduct.

The Court agrees.  There are no material disputes of fact in the record regarding the timing of

Defendants' call for an ambulance.  There was no significant delay by officers in summoning

emergency care.  Moreover, Dr. Spitz' report does not attribute any of the alleged delay to

Defendants, and does not even identify what the alleged delay was.  Defendants cannot be held

liable for matters beyond their control, such as ambulance response time or the distance from a

suitable hospital.  This aspect of Spitz' report and testimony will be excluded at trial.

Defendants also challenge Spitz' opinion regarding the location of the shooter.

Defendants contend that there is inadequate foundation because Spitz did not take

measurements, do tests, or visit the scene.  However, Plaintiff is not offering Spitz as an expert

in trajectory analysis, but as a pathologist.  Thus, *Gates v. City of Memphis*, 2000 WL 377343

*4 (6th Cir. 2000) (unpublished) (noting that proposed expert had no training in anatomy or

physiology), is distinguishable.  Spitz has specialized experience and training in wound

reconstruction that may be helpful to the jury to either refute or corroborate the crime scene

investigation performed by Balash.  Defendants will be entitled to explore the alleged

shortcomings in Spitz' information and analysis during cross-examination.  As noted above,

Spitz will not be permitted to testify to matters beyond his report regarding the physical location

of the shooter.

Finally, Defendants challenge Spitz' opinion regarding Sonnier's life expectancy.

The report's entire discussion of this subject is as follows: "Mr. Sonnier had an average life

expectancy."  There is absolutely no discussion of the basis for Spitz' conclusion and no

discussion of the factual support or methodology he used to reach the opinion.  The Court is

aware that the autopsy examination showed that Sonnier was not affected by any disease

processes, but Dr. Spitz makes no effort to cite to that evidence or to explain how it relates to

his opinion on life expectancy.  Accordingly, the Court agrees with Defendants that this opinion

is wholly conclusory and without foundation and it will be excluded at trial.


III.        Motion to Strike Witness "Affidavits" (Document No. 81)

Defendants object to the technical form of statements submitted on behalf of two fact

witnesses, Charles Ray James Brady and Haley Wilson.  Defendants contend that the statements

were not properly notarized or made under penalty of perjury pursuant to 28 U.S.C. § 1746 and

were not dated.  Plaintiff's counsel avers that the original affidavits were properly sworn, and

also has submitted new, substantively identical statements from each witness that comply with

Section 1746.  Accordingly, the motion will be denied.


IV.      Defendants' Motions for Summary Judgment

        Plaintiff filed a four-count complaint, asserting claims for: (1) excessive force and

unreasonable delay in obtaining medical care pursuant to Section 1983; (2) gross negligence,

willful and wanton misconduct, assault and battery and/or intentional infliction of emotional

distress; (3) wrongful death under the Pennsylvania Wrongful Death statute; and (4) a "survival

action" for Sonnier's conscious pain and suffering.[3]  The Defendants have filed a joint

statement of material facts (Document No. 66), but each has filed a separate motion for

summary judgment on all counts (Document Nos.62, 64, 68, 70).

        Summary judgment should be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of

fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere

scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams

v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S.

---

[3]The Wrongful Death statute and the "survival action" are not substantive causes of action.
Instead, they provide a statutory mechanism to assert claims and recover damages on behalf of a
deceased.  *See* 42 Pa. C.S.A. §§ 8301, 8302.

at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory

allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.*

(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the

summary judgment standard requires the non-moving party to create a "sufficient disagreement

to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.


       A.      Section 1983 Claims

       Section 1983 of title 42 of the United States Code does not create substantive rights,

but rather provides a remedy for the violation of rights created by federal law.  *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  A *prima facie* case under § 1983 requires a

plaintiff to demonstrate:  (1) that the alleged wrongful conduct was committed by a person

acting under color of state law; and (2) that the conduct deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the United States.  *Nicini v.*

*Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  In the instant case, Plaintiff asserts claims for

unlawful use of deadly force and for the denial of medical care.

       1.      Excessive Force

       In *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), the Supreme Court held that use of

deadly force constitutes a seizure that must be evaluated for reasonableness under the Fourth

Amendment.  In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court reaffirmed the

guidelines for use of deadly force articulated in *Garner* and *Graham v. Connor*, 490 U.S. 386

(1989).  An officer may use deadly force to prevent escape if the officer has probable cause to

believe that the suspect poses a threat of serious physical harm to the officer or others.

13

*Brosseau*, 543 U.S. at 197-98.  However, use of deadly force is not reasonable to prevent a felony suspect from escaping where the person poses no immediate threat to the officer or others.  *Garner*, 471 U.S. at 11-12.  Officers are not constitutionally authorized to seize an unarmed, non-dangerous suspect by shooting him dead.  *Id.*  While the Fourth Amendment inquiry focuses on the perspective of a reasonable officer at the scene, all factual inferences at the summary judgment stage must be drawn in the light most favorable to Plaintiff, as the non-moving party.

A reasonable jury could conclude that Officer Field used excessive force.  The jury could conclude that he shot Sonnier after the truck had passed him and no longer posed a danger to officers or others.  *See, e.g. Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005) (denying summary judgment involving similar incident in which the shot's trajectory was alleged to come from behind); *compare Brosseau,* 543 U.S. at 200 (granting qualified immunity where law was uncertain as to use of force on fleeing suspect that *did* pose a danger to others).  In *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999), the Court of Appeals reversed a district court's grant of summary judgment in a similar situation on the ground that the court improperly resolved material questions of fact as to whether the escaping driver posed a danger.  In *Abraham*, despite giving due regard to the split-second timing and pressures faced by the officer (who may have been struck by the escaping car), and the need to avoid 20/20 hindsight, the Court found that factual disputes prevented the award of summary judgment.  Viewing the record in the instant case in the light most favorable to Plaintiff, Officer Field's motion for summary judgment must be denied.  A jury could conclude that Field used unreasonably excessive force.  Similarly, Field is not entitled to qualified immunity because the law is clear

14

that deadly force cannot be used on a fleeing suspect who does not pose a danger.  At trial, Officer Field will have a full opportunity to convince the factfinder that he had probable cause to believe that Sonnier posed a danger to himself or others such that his use of deadly force was reasonable.

Defendants Fike, Mrosko and Costello are entitled to summary judgment on the claim of excessive force.  It is undisputed that Officer Field fired the fatal shot.  Costello and Mrosko did not fire their weapons at all.  Fike testified that she fired one shot, but it did not hit Sonnier or the truck.  Plaintiff's expert agreed that the original stop and decision to initiate pursuit by Fike was reasonable.  Katsaris Report at 4.  None of the officers' conduct during the pursuit constituted a seizure or caused Sonnier's injuries.  In sum, the record does not support an excessive force claim against Fike, Mrosko or Costello.

2.      Denial of Medical Care

Plaintiff cannot establish a constitutional violation concerning an alleged delay in providing medical attention.  This aspect of Plaintiff's Section 1983 claim is premised not on an alleged unreasonable use of force, but rather on an alleged indifference to serious medical needs.[4]  The "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).  "Deliberate indifference" requires proof that the officers knew of

---

[4]The Constitutional right arises under the Fourteenth Amendment, rather than the Eighth Amendment, as Sonnier was a pretrial detainee, although it is based on a similar standard.

the arrestee's need for medical care and either (i) intentionally refused to provide such care, (ii) delayed medical care for non-medical reasons, or (iii) denied a reasonable request for treatment. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). A "serious medical need" is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's urgent attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Minor injuries which do not require hospital care do not trigger the due process clause. *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987).

In the instant case, there is no dispute that Sonnier had a serious medical need. However, there is also no material dispute of fact from which a reasonable jury could find deliberate indifference. After the truck was finally stopped, Field and Mrosko then yelled for Sonnier to show his hands, tactically approached the truck, pried Sonnier's hand from the wheel and removed him from the vehicle. It is undisputed that the officers first realized that Sonnier had been shot after they approached the stopped truck. The officers tried to control the bleeding and called for an ambulance immediately. The dispatcher's log shows that at 4:51 pm, officers were still in pursuit of Sonnier, and the medics testified that the ambulance was called at 4:51 pm. Another ambulance was called at 4:53 pm. Accordingly, there was no substantial delay between the time officers apprehended Sonnier and when they summoned medical help. The Defendant officers cannot be held responsible for matters beyond their control, such as the time it took the ambulance to arrive on scene, or the time it took the ambulance to reach the hospital. *See Black v. City of Reading*, 2006 WL 964118 *7 (E.D. Pa. 2006) (dismissing Section 1983 claim involving similar incident).

Plaintiff cites to the autopsy findings of numerous abrasions and bruises on Sonnier's body that had been inflicted within twelve hours of his death.  However, Dr. Wecht testified at the autopsy that the abrasions were consistent with Sonnier being dragged from the truck, and that he did not think Sonnier had been beaten.  The opinion of Plaintiff's expert Dr. Spitz, that a delay in providing medical assistance played a significant role in Sonnier's death, is not admissible because it is wholly conclusory.  There are simply no material disputes of fact in the record regarding the timeline of events concerning Sonnier's removal from the truck and the request for medical treatment from which a reasonable jury could find that the officers were deliberately indifferent to Sonnier's medical needs.  To the contrary, the record reflects that medical care was summoned promptly.  All Defendants are entitled to summary judgment on this claim.

3.      State Law Claims

Plaintiff has asserted  state law tort claims for gross negligence, willful and wanton misconduct, assault and battery and/or intentional infliction of emotional distress.  Defendants claim immunity under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 *et seq.*  It is undisputed that all Defendants were acting within the scope of their employment for local municipalities.  The statutory immunity may be removed if the acts of the employee constituted a crime, fraud, actual malice or willful misconduct, or falls within one of the eight exceptions contained in the Act.  42 Pa. C.S.A. §§ 8542, 8550.   An employee may not be held liable where the conduct was authorized or required by law, or where the employee in good faith reasonably believed the conduct was authorized by law.  42 Pa. C.S.A. § 8546(2).

17

In *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994), the Pennsylvania Supreme Court held that Plaintiff must show that the officer violated applicable standards and that the officer had a subjective intent to knowingly violate the law.  In cases involving alleged police misconduct, the term "willful misconduct" does not have the same meaning as the term "intentional tort." *Id.* at 293-94.  An officer is entitled to use force to effectuate an arrest; it is the *reasonableness* of that use of force that determines whether there has been an assault and battery. *Id.* at 293.

Under this test, it is apparent that Plaintiff cannot assert negligence claims against Defendants.  Plaintiff implicitly concedes this point by not contesting it.  Officers Fike, Mrosko and Costello are entitled to summary judgment as to all tort claims, as there is no evidence in the record from which a jury could reasonably find that they committed any tort or that they acted with willful misconduct.  On the other hand, for the reasons explained above, Officer Field is not entitled to summary judgment as to intentional tort claims relating to the alleged use of excessive force.   The Court reiterates that at the summary judgment stage, it must construe the numerous factual disputes in the record in the light most favorable to Plaintiff.

## CONCLUSION

In summary, when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Officer Field violated his constitutional right to be free from unreasonable seizure.  For similar reasons, Plaintiff's intentional tort claims against Field also survive summary judgment.  The record cannot support a claim against any Defendant for deliberate indifference to Sonnier's medical needs.  Defendants Fike, Mrosko and Costello are

18

entitled to summary judgment on all counts and will be dismissed from the case.  The

challenges to Plaintiff's experts will be granted in part and denied in part.  The Court will issue

a pretrial order setting forth a schedule for presenting the remaining claims to a jury.


        An appropriate order follows.


                        McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KERMITH SONNIER, As Personal** | ) | |
| **Representative of the Estate of Kermith** | ) | |
| **Sonnier, Jr., Deceased,** | ) | **2:05-cv-14** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **OFFICER DENNIS FIELD, OFFICER** | ) | |
| **AUTUMN FIKE, OFFICER JOSH** | ) | |
| **MROSKO, OFFICER MARK** | ) | |
| **COSTELLO, In Their Individual** | ) | |
| **Capacity,** | ) | |
| | ) | |
| **Defendant.** | | |

**ORDER OF COURT**

AND NOW, this 21st day of February, 2007, in accordance with the foregoing

Memorandum Opinion, it is **ORDERED, ADJUDGED, AND DECREED** that:

DOCUMENT NO. 51:  MOTION TO COMPEL PRODUCTION OF TREATMENT RECORDS FROM GREENBRIER TREATMENT CENTER BY DEFENDANT FIKE is **GRANTED** and Greenbrier shall fully comply with the authorization and subpoena and shall produce the relevant treatment records of Kenneth Sonnier, Jr. forthwith;

DOCUMENT NO. 53:  DEFENDANTS' JOINT MOTION CHALLENGING SUBSTANCE AND ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY OF DAVID E. BALASH  is **GRANTED IN PART AND DENIED IN PART.**

DOCUMENT NO. 54:  DEFENDANTS' JOINT MOTION CHALLENGING SUBSTANCE AND ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY OF W. KENNETH KATSARIS is **GRANTED IN PART AND DENIED IN PART.**

DOCUMENT NO. 55:  DEFENDANTS' JOINT MOTION CHALLENGING SUBSTANCE AND ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY OF WERNER U. SPITZ, M.D. is **GRANTED IN PART AND DENIED IN PART.**

DOCUMENT NO. 62:    MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
                    COSTELLO is **GRANTED.**

DOCUMENT NO. 64:    MOTION FOR SUMMARY JUDGMENT BY DEFENDANT FIKE
                    is **GRANTED.**

DOCUMENT NO. 68:    MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
                    FIELD, is **GRANTED IN PART AND DENIED IN PART.**  The
                    motion is **DENIED** as to Plaintiff's Section 1983 and intentional tort
                    claims relating to the alleged use of excessive force and **GRANTED**
                    in all other respects.

DOCUMENT NO. 70:    MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
                    MROSKO is **GRANTED.**

DOCUMENT NO. 81:    DEFENDANTS' JOINT MOTION TO STRIKE "AFFIDAVITS" OF
                    CHARLES RAY JAMES BRADY AND HALEY WILSON is
                    **DENIED.**

Defendants Fike, Mrosko and Costello are hereby dismissed from the case and the caption is

amended to hereafter read as follows:

> **KERMITH SONNIER, As Personal Representative**   )
> **of the Estate of Kermith Sonnier, Jr., Deceased,**   )
> **Plaintiff,**   )   2:05-cv-14
> **v.**   )
>    )
> **OFFICER DENNIS FIELD, In His Individual**   )
> **Capacity,**   )
> **Defendant.**   )

Plaintiff shall file a Pretrial Narrative Statement on or before **March 13, 2007** and

Defendant Field shall file a Pretrial Narrative Statement on or before **April 2, 2007**.  A Pretrial

Conference is scheduled on **April 10, 2007 at 1:30 P.M.** before the undersigned in Courtroom

6C, 6th Floor, U.S. Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania 15219.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:       Bradley M. Bassi, Esquire
           Email: bbassi@bmv-attorneysatlaw.com
           Geoffrey N. Fieger, Esquire
           Email: g.fieger@fiegerlaw.com
           Robert M. Giroux, Jr., Esquire
           Email: r.giroux@fiegerlaw.com

OFFICER DENNIS FIELD and OFFICER JOSH MROSKO
           David H. Patterson, Esquire
           Email: david@dhpattersonassociates.com

OFFICER AUTUMN FIKE
           Brian P. Gabriel, Esquire
           Email: bgabriel@cdblaw.com
           Robert E. Durrant, Esquire
           Email: rdurrant@cdblaw.com

OFFICER MARK COSTELLO
           Robert J. Grimm, Esquire
           Email: rgrimm@swartzcampbell.com